ALEXANDER C. ROWLAND ET AL., TRUSTEES, ETC., PROSECUTORS, v. MERCER COUNTY TRACTION COMPANY, DEFENDANT.

Argued November 10, 1916—Decided February 20, 1917.

1. In a proceeding for the taking of lands under the Eminent Domain act, the omission as parties of owners of land in whose favor an easement of way exists across the land to be taken, will not entitle the general owner to have the order for appointment of commissioners set aside.

2. Under the Street Railway act of 1893 (*Comp. Stat., p.* 5021), the necessity for the taking of lands exists when it appears that they are required for a route lawfully filed, and otherwise complying with the statute.

3. The fact that. the taking is in pursuance of a general project, involving with the creation of new highways in a municipality the removal of a railroad terminal and trolley terminal, so as to connect detached sections of a university campus, does not deprive the improvement of its public character.

4. The change of a trolley terminus to a new site, and its connection with the existing line at a convenient point, involves the building of a new line in a sense covered by sections 6 and 13 of the Street Railway act of 1893.

On *certiorari.*

Before Justices GARRISON, PARKER and BERGEN.

For the prosecutors, *Julian C. Harrison.*

For the defendant, *Edward M. Hunt.*

The opinion of the court was delivered by

PARKER, J.   The attack is upon an order of a justice of this court appointing commissioners under the Eminent Domain act (*Comp. Stat., p.* 2181; *Pamph. L.* 1900, *p.* 79) to value certain lands in Princeton, of which prosecutors hold the fee as trustees under the will of Andrew L. Rowland, deceased. The traction company desires to acquire the lands in question for use as a terminal in lieu of its present terminal which adjoins the tracks of the Pennsylvania Railroad Company some three hundred feet to the eastward.

The first point made by prosecutors is that the petition is on its face insufficient, in that it fails to state the names and residences of all the persons contemplated by the statute as parties to the proceeding.   Section 2 says it "shall set forth the names of the owner and occupant, if any there be, and of the persons appearing of record to have any interest in said property."   The petition names certain persons as being "the owners and occupants of and the persons interested in said land and premises."   We are unable to see that the difference is more than formal.   But if we are in error, then the petition goes further, substantially, than the act requires, for persons appearing of record to have an interest may in fact have none, whereas the petition purports to include all having an interest whether the same appear of record or not.   This is curable by amendment, if necessary, under section 17, and plainly should not vitiate the proceedings.

But it is further claimed that in fact the petition omits the owners of easements of way over a portion of the premises, and that for this reason the order should be set aside.   We do not think the fact appears very clearly by the proofs taken,

but, assuming it established, the objection is not one which affects the prosecutors adversely; for, on the face of the proceedings, the land is taken as an unincumbered fee, and if this be paid for, as it must be, and if the easement holders are entitled to a share of the award and insist on being paid that share, this will not deprive prosecutors of anything to which they themselves are entitled. See *Bright* v. *Platt,* 32 *N. J. Eq.* 362. The fact that such easement holders are not now brought in, and in the present state of the record have no opportunity to produce evidence as to the total value of the property, which is all that is now in question (*Herr* v. *Board of Education,* 82 *N. J. L.* 610), is nothing of which prosecutors can legally complain. Indeed, the easement holders might bring their action after the award and irrespective of it; in which case prosecutors would receive the award undiminished by their claim for a share of it. The company simply proceeds at its peril as to omitted claimants. *National Railway Co.* v. *E. & A. Railroad Co.,* 36 *Id.* 181. The petitioner might have asked that the award be made subject to the easements, as is often done in similar proceedings when a restricted use is contemplated. *National Docks Co.* v. *United Companies,* 53 *Id.* 217, 222, and cases cited. That it has elected to take the rights of prosecutors as a fee unincumbered by easements cannot injure prosecutors. And, if need be, as we have already said, the petition and proceedings can be amended to bring in these omitted parties, and no doubt would be so amended on their application, as they are manifestly entitled to be heard on the gross valuation. But their omission constitutes no valid ground to set aside the proceedings at the instance of the general owners.

The next point is that no public necessity exists for the taking of these lands. The general "necessity" for the taking of lands required for the route of a street railway company incorporated under the act of 1893 (*Comp. Stat., p.* 5021) has been determined by the legislature, which has, in effect, said that the public necessity exists whenever the land in question is necessary for the construction of any railway built under the provisions of the act, either as an extension of the

line of an existing railway or a new line not exceeding sixty feet in width * * * or as may be required for the locating and constructing all necessary works, &c. Section 13. The land desired nowhere exceeds the statutory width; and, as it is not denied that the company is lawfully organized with the powers conferred by the statute, it follows that if it be building either an extension or a new line, and the land is necessary for its construction, the legislative policy is satisfied. No bounds appear to have been set by the legislature to the location of such new line or extension, except the requirement that the survey and location shall be filed in a designated public office, and the permission of the municipality shall have been obtained. Granted the legality of the survey and location now under consideration, the necessity of the land to permit construction follows, as of course.

Assuming, however, that the public "necessity" of the construction of this new terminus in lieu of the present one, is a matter of judicial consideration, as in *Easton and Amboy Railroad v. Greenwich*, 25 *N. J. Eq.* 565, and that we are to determine this question on the evidence, we proceed to examine it, with the reservation that the phrase "public necessity," if used at all, must be considered as equivalent to "public benefit" or "public use." Passing to the facts, we find that by co-operation of the authorities of Princeton University, a great seat of learning which is the principal feature of Princeton; of the municipal government; of the Pennsylvania Railroad Company, whose local terminal property adjoins the present terminal of defendant; and of the defendant company, a general revision of the municipal plan of streets and highways in this section of the town is projected, with the object of connecting the extensive and unbroken college campus, lying east of the present railroad terminal, and which is one of the chief attractions of the university, with the ample grounds of the graduate college, another part of the same university, on the west. At the same time several new streets are to be opened to public use; the new arrangement will remove the railroad and trolley terminal from unnecessary proximity to one of the principal dormitories of the university.

facilitate direct communication between the graduate school and college campus without crossing railroad tracks and beautify a part of the town which heretofore has been more or less unsightly. All this, as appears by the evidence, has been made financially possible by liberal gifts from generous benefactors of the university who no doubt were largely prompted by consideration of its welfare, but whose liberality plainly enures in great measure to the public good. Under the circumstances, we think it would be quite unreasonable to hold that the change of terminal of defendant, which is an essential part of the scheme, is not a public benefit. On the contrary, we are satisfied that such benefit will necessarily result.

Prosecutors next argue that the proposed change of terminus is not within the letter of the statute. The act, by section 6, gives power to "build any new line of railway," and, by section 6, to take land necessary therefor. The length of such "new line," either maximum or minimum, is not specified, nor whether it is to be a main line, branch or a spur. We think it plain that this change of the terminal by abandonment of some one thousand two hundred feet of original line and location of about eight hundred feet of line in another place, involves the building of a new line in a sense covered by the statute. See *Morris and Essex Railroad Co.* v. *Central Railroad Co.,* 31 *N. J. L.* 205.

The fourth point, alleging violation of the constitutional rights of prosecutors, rests either on assumptions of fact contrary to our findings, as outlined above; or on the proposition that the taking is, in effect, that of the benefactors of the college and not that of the street railway company. It is, no doubt, true that the proposed change of terminal was suggested by those benefactors; but if it is a legitimate public improvement, as we have held that it is, the fact that it is undertaken at the suggestion of parties moved by other considerations will not destroy its public character nor deprive it of the statutory support.

The writ of *certiorari* will be dismissed, with costs.